UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re:                                    Case Number: 15-10704-7

    BRADLEY A. WINDESHAUSEN,

        Debtor.

    KATHERINE J. HEBL,

            Plaintiff,
            v.                            Adversary Number: 15-83

    BRADLEY A. WINDESHAUSEN,

        Defendant.

## **<u>DECISION</u>**

Debtor/Defendant Bradley A. Windeshausen filed a voluntary chapter 7 petition on February 28, 2015. Creditor/Plaintiff Katherine Hebl filed this adversary complaint on June 2, 2015. The complaint seeks to hold a state court arbitration award nondischargeable. The Plaintiff filed a motion for summary judgment that the Defendant opposed.

### **FACTS**

The Defendant was a member of Whiskey Dicks, LLC (the "LLC"). In July 2007, the Plaintiff became a member of the LLC when she bought out another member's interest and executed a formal membership agreement with the Defendant. The Plaintiff was 21 and the Defendant was 38. The Plaintiff and the Defendant were in a romantic relationship.

After becoming a member, the Plaintiff loaned the LLC $105,000, for which she received a personal guarantee from the LLC. The Plaintiff and the Defendant were to split the profits and losses evenly. The Plaintiff alleges that the Defendant took control of the finances, making all cash deposits and maintaining the records. The Defendant maintains that decision making regarding the operation was "made cooperatively."

The Plaintiff alleges the Defendant used LLC funds to pay personal bills and expenses for his construction company. The LLC's debt grew during the Plaintiff's time as co-owner.

The bar went out of business in early 2011 and foreclosure followed. The Plaintiff sued the Defendant in state court for converting LLC funds and for breach of contract.

In December 2012, Defendant's counsel at the time, Dave Czech, wrote a letter to Plaintiff's counsel proposing they submit the case to arbitration. Attorney Czech stated that "[b]oth parties would agree that the other party has not fraudulently taken any money they were not entitled to. Both parties would also agree that any judgment ordered by the Court would not be dischargeable in bankruptcy." Attorney Czech copied the Defendant on this correspondence.

In March 2013, the parties agreed to submit their case to binding arbitration. The Agreement Regarding Submission to Binding Arbitration (the "Arbitration Agreement" or "Agreement") states the "parties agree that it is their intent that the arbitrators' award be non-dischargeable pursuant to *Archer v. Warner*, 538 U.S. 314 (2003)." The Arbitration Agreement was signed by the

2

attorneys, not the parties. The Defendant received a copy of the Arbitration

Agreement.

The matter proceeded to arbitration. The Defendant appeared at and

participated in the arbitration hearing. On July 2, 2013, Circuit Court Judge

Thomas Barland confirmed the arbitrators' award of $310,000 for the Plaintiff.

The arbitrators' award contains no findings of fact.

The Defendant now maintains he never gave his attorney the authority to

agree to the provision regarding nondischargeability. He also contends he was

told and expected he could file bankruptcy if the arbitrator came back with an

unfavorable ruling.

## DISCUSSION

### A.   **Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a) (applied through Fed. R. Bankr. P.

7056). The Court must view all facts and indulge all inferences in the light

most favorable to the Defendant and determine whether there is a genuine

issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43, 106 S. Ct.

2505, 91 L. Ed. 2d 202 (1986). When faced with a motion for summary

judgment, the court's role is to determine whether there is a genuine issue for

trial, not to weigh the evidence to determine the truth. *Id.*

As a procedural matter, on summary judgment "the burden is on the

moving party to establish that there is no genuine issue about any material

fact, or that there is an absence of evidence to support the nonmoving party's

case, and that the moving party is entitled to judgment as a matter of law." 20

Charles Alan Wright, Arthur R. Miller & Edward Cooper, *Federal Practice and*

*Procedure* § 105 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct.

2548, 91 L. Ed. 2d 265 (1986)).

In nondischargeability actions, the plaintiff has the burden of proving by

a preponderance of the evidence each element of an exception to discharge is

satisfied. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d

7655 (1991). Only if the plaintiff can make out a prima facie case would the

defendant be required to demonstrate a genuine issue of material fact to defeat

the motion for summary judgment. *See Celotex Corp.*, 477 U.S. at 324;

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-50.

The nonmoving party must present evidence to show there is a genuine

issue for trial. This evidence does not have to be "in a form that would be

admissible at trial in order to avoid summary judgment." *Celotex*, 477 U.S. at

324. The nonmoving party may oppose the motion by "any of the kinds of

evidentiary materials listed in Rule 56(c), except for the mere pleadings

themselves." *Id.* "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50

(internal citations omitted).

**B.     Whether the Arbitration Agreement and Nondischargeability Provision are Enforceable**

The first issue is whether the Defendant is bound by the Arbitration Agreement. Attorney Czech represented the Defendant throughout the arbitration process. It was Attorney Czech who proposed using arbitration. The Agreement specifically stated that Czech had the authority to enter into the Agreement.

> The individuals signing below have the right, power and authority, legal and otherwise, to enter into this Agreement on behalf of the identified party and to take any and all actions required to be taken by such Party under this Agreement without the consent or approval of any other person or entities.

ECF Doc. 15, Exh. F, p. 3.

"Common law principles of contract and agency law allow a signatory . . . to bind a non-signatory . . . to an arbitration agreement." *Bd. of Trs. v. Citigroup Global Mkts., Inc.*, 622 F.3d 1335, 1342 (11th Cir. 2010) (quoting *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008)). State law determines whether parties have reached an enforceable agreement or settlement. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). In this context, the Arbitration Agreement is the equivalent of a settlement because it was intended to resolve the claims.

An attorney may not settle a case without the client's consent, but the client has the burden of demonstrating the lack of consent to the trial court upon learning of the unauthorized act. *D & D Carpentry, Inc. v. U.S. Bancorp*, 2010 WI App 122, 329 Wis. 2d 435, 792 N.W.2d 193, 198 (2010); *Balzer v.*

*Weisensel*, 258 Wis. 566, 46 N.W.2d 763, 764 (Wis. 1951). In *Balzer*, the

client's attorney signed a written settlement agreement in open court despite

the fact the client was not present and did not sign it. *Balzer*, 46 N.W.2d at

764. The order was served upon the client personally and the client neither

appeared in person nor filed an affidavit in response. *Id.* The client objected

after the fact. The court ruled the client had cloaked the attorney in apparent

authority to settle the case. *Id.*

The client in *D & D* took proactive steps to raise the consent issue. After

learning of the binding arbitration her attorney entered into on her behalf, she

hired new counsel and filed a motion to reconsider based on her attorney's lack

of authority. *Id.* She testified that she did not give her attorney the authority to

arbitrate, and that she told him she did not want to arbitrate. Her original

attorney confirmed he did not have authority. *Id.* Based upon those facts, the

court concluded the client made a prima facie case that she did not authorize

her attorney to enter into arbitration, and was therefore entitled to have a fact

finder make that determination. *Id.* at 199.

The Defendant took no proactive steps to question the Arbitration

Agreement. Attorney Czech signed the Arbitration Agreement on behalf of the

Defendant. Czech copied the Defendant on the letters describing the

Agreement, including the initial letter from December 2012 proposing

arbitration and the March 2013 letter including the final Agreement. The

Defendant did not object to or in any way make it known to the Plaintiff, the

arbitrators, or the court that he did not wish to enter into the Arbitration

6

Agreement. The Defendant appeared at the arbitration and raised no objection

at that hearing. Neither did he object when the arbitrators submitted the award

to the circuit court. In fact, the Defendant did not raise any objections to the

Arbitration Agreement until this case arose, approximately 2-1/2 years after

the Agreement was signed. Based upon *Balzer* and *D & D*, the Defendant

cloaked Attorney Czech in apparent authority to settle the case, and therefore

the Arbitration Agreement is binding on him.

Consent may also be demonstrated by ratification. Ratification is "the

confirmation of a previous act done either by the party himself or by another;

as, confirmation of a voidable act." *Estate of Bydalek v. Metropolitan Life Ins.

Co., 220 Wis. 2d 739, 746,* 584 N.W.2d 164, 167 (Wis. Ct. App. 1998) (citing

*Black's Law Dictionary* 1261 (6th ed. 1990)). Ratification treats the act as

originally authorized by the person. *Id.* It may be express or inferred from

conduct. *Id.* The Defendant had notice of the Arbitration Agreement, and by not

objecting, he cloaked his attorney in authority to settle. Thus, he also ratified

the Arbitration Agreement.

The next issue is whether the provision determining the arbitration

award would be nondischargeable is enforceable. The Plaintiff argues the

Arbitration Agreement, which provides that an award will be nondischargeable,

is dispositive of the issue. The Plaintiff argues that while contracting to make

an ordinary debt nondischargeable is not allowed, there is no law against

"resolving disputes as to the dischargeability of debt when there is a factual

7

basis for non-dischargeability." The Defendant counters that prepetition waivers of dischargeability are not enforceable in bankruptcy.

In *Hyundai Motor Fin. Co. v. McKay (In re McKay)*, 443 B.R. 511 (Bankr. E.D. Ark. 2010), a debtor and a creditor entered into a settlement agreement providing that a portion of debt would be deemed nondischargeable. The court upheld the settlement, and ruled that the parties did not need court approval to enter into it. *Id.* at 522-23. The key fact illustrating the difference between *McKay* and this case is that, in *McKay*, the parties agreed to the settlement involving nondischargeability after the bankruptcy and an adversary proceeding had been filed, not prepetition. *Id.* at 514.

The Defendant argues that prepetition waivers of discharge are not enforceable. For this assertion he quotes *Klingman v. Levinson*, 831 F.2d 1292, 1296, n.3 (7th Cir. 1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."). *See also Rice v. Sasse (In re Sasse)*, 438 B.R. 631, 645 (Bankr. W.D. Wis. 2010) (stating that "pre-petition waivers of discharge or a promise not to file bankruptcy are not enforceable"). The Plaintiff acknowledges this rule, but states that the Defendant "didn't contract away his right for this court to determine the dischargeability of the debt. Rather, given the disputed facts, he agreed that it was his intent that the debt be non-dischargeable." ECF No. 20.

The Defendant argues that Congress failed to authorize prepetition waivers of discharge but did authorize certain postpetition waivers, and this must be viewed as intentional. The Defendant relies upon *Hayhoe v. Cole (In re*

8

*Cole)*, 226 B.R. 647 (B.A.P. 9th Cir. 1998). The Code contains only two methods

for a debtor to waive discharge of debts:

> Section 727(a)(10) permits a debtor to waive the discharge of *all*
> debts simply by executing a postbankruptcy written agreement
> that is approved by the bankruptcy court. *See* 11 U.S.C.
> § 727(a)(10). Similarly, a debtor may waive the dischargeability of a
> *specific* debt if the waiver satisfies the reaffirmation requirements
> of § 524(c). *See* 11 U.S.C. § 524(c).

*Id.* at 653. The court went on the say that "[w]here Congress has failed to

include language in statutes, it is presumed to be intentional when it has used

such language elsewhere in the Code." *Id.* at 653-54. "Here, Congress' failure to

authorize prepetition waivers of discharge, while at the same time authorizing

certain postpetition waivers of discharge . . . must be viewed as intentional." *Id.*

at 654. *See also Lichtenstein v. Barbanel*, 2005 WL 3479656, at *6 (6th Cir.

2005) ("A pre-petition stipulation in a state-court action waiving a debtor's

right to obtain a discharge of a specific debt in a future bankruptcy case is void

because it offends the public policy of promoting a fresh start for individual

debtors.").

  *Lichtenstein* also distinguished between "decisions addressing the validity

of 'prepetition waivers of discharge resulting from state court litigation' and

those holding 'that waivers of discharge did not have to comply with the

requirements of § 524.'" *Id.* (internal citations omitted). While a state court

stipulation that waives discharge is unenforceable, a stipulation "in a related

bankruptcy case that a debt is nondischargeable is enforceable." *Id.* This case

involves the former. The prepetition waiver of discharge in the Arbitration Agreement is not binding on the Defendant.

### C.   **The Claims**

The Plaintiff's state court complaint contained two causes of action: one for conversion, and one for breach of contract. The conversion claim alleges the Defendant converted funds belonging to the LLC and the Plaintiff. The breach of contract claim alleges the Defendant breached the operating agreement by taking money to which he was not entitled. The parties agreed to submit the matter to arbitration.

Conversion is "the intentional, unauthorized control of another's chattel so as to interfere with the owner's possessory rights." *Midwestern Helicopter, LLC v. Coolbaugh*, 2013 WI App 126, 351 Wis. 2d 211, 839 N.W.2d 167, 170, (2013). There are three elements to conversion. A person is liable for conversion "when he or she (1) intentionally controls or takes property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's rights to possess the property." *Id.* Damages for conversion include the value of the property at the time of conversion and interest up to the date of the trial. *Id.*

The adversary complaint asserts nondischargeability under sections 523(a)(2) and (4). Section 523(a)(2) covers money obtained by false pretenses, false representation, or actual fraud. It requires proof of false or deceptive conduct, fraudulent intent, and reliance. The Plaintiff must establish the following elements: (a) the Debtor made a false representation of fact, (b) which

the Debtor either knew to be false or made with reckless disregard for its truth,
(c) made with an intent to deceive, and (d) the Plaintiff justifiably relied on the
false representation. *In re Kimzey*, 761 F.2d 421, 423-24 (7th Cir.1985); *Vozella
v. Basel-Johnson (In re Basel-Johnson)*, 366 B.R. 831, 834 (Bankr. N.D. Ill.
2007).

Section 523(a)(4) covers debts "for fraud or defalcation while acting in a
fiduciary capacity, embezzlement, or larceny." For allegations of fraud or
defalcation, it is necessary for the plaintiff to show that the debtor acted as a
fiduciary at the time the debt was created, and that the debt was created by
fraud or defalcation. *Follett Higher Educ. Group, Inc. v. Berman (In re Berman)*,
629 F.3d 761, 765-66 (7th Cir. 2011). Not all persons treated as fiduciaries
under state law are considered to act in a "fiduciary capacity" within the
meaning of the bankruptcy code. *Id.* at 767. Such a relationship exists in
situations in which "one party to the relation is incapable of monitoring the
other's performance of his undertaking, and therefore the law does not treat
the relation as a relation at arm's length between equals." *In re Marchiando*, 13
F.3d 1111, 1116 (7th Cir. 1994).

Embezzlement and larceny do not require that the individual committing
the act be a fiduciary of the victim. *Huntington Nat'l Bank v. Aman (In re Aman)*,
498 B.R. 592, 603 (Bankr. N.D. W. Va. 2013) ("Importantly, 'while acting in a
fiduciary capacity' only qualifies 'fraud or defalcation'; acts of embezzlement or
larceny do not require the concomitant condition of the act while the individual
is a fiduciary."). Embezzlement requires that the victim's property come into

11

the perpetrator's hands lawfully. *Bank Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 332 (Bankr. N.D. Ind. 2006) (citing *Webber v. Giarratano (In re Giarratano)*, 299 B.R. 328, 338 (Bankr. D. Del. 2003)). To establish embezzlement, the plaintiff must demonstrate that "(1) the person was lawfully entrusted with property or property lawfully came into the hands of that person, and (2) the property was fraudulently appropriated." *Id.* (quoting *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 671 (Bankr. E.D. Va. 2001)). Larceny occurs for purposes of section 523(a)(4) if "the debtor has wrongfully and with fraudulent intent taken property from its owner." *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 902 (7th Cir. 1991).

The elements of conversion may give rise to a section 523(a)(2) claim if the Plaintiff can also prove fraudulent intent and reliance. Conversion might also support a 523(a)(4) claim if the Defendant was a fiduciary of the Plaintiff or if the elements of embezzlement or larceny are established. Finally, a conversion claim might be held nondischargeable as willful and malicious injury under section 523(a)(6).

The arbitration award does not contain findings of fact or conclusions of law. The award does not contain any detail as to the basis for the award. It could stem from either or both claims. Because there were no findings of fact or conclusions of law in the arbitration award, it is not possible to determine whether the elements for any claim under section 523 are present and satisfied by the arbitration award. The need for an evidentiary hearing has not been obviated.

D.    **Estoppel**

1. Promissory Estoppel

The Plaintiff argues that even if the nondischargeability provision is found to be non-binding, the Defendant should still be estoped from arguing the debt is nondischargeable.

To enforce a promise through promissory estoppel in Wisconsin, the Plaintiff must prove (1) the promise was "one that the promisor should reasonably have expected to induce either action or forbearance of a definite and substantial character," (2) the promise did in fact induce such action, and (3) the enforcement of the promise is necessary to avoid an injustice. *U.S. Oil Co. v. Midwest Auto Care Services, Inc.*, 150 Wis. 2d 80, 440 N.W.2d 825, 828 (Wis. Ct. App. 1989). "The first two elements are questions for the fact finder. The third is a policy question to be decided by the court in the exercise of its discretion." *Id.*

The Restatement (Second) of Contracts lists several factors that courts should consider when deciding whether injustice can be avoided only by enforcing a promise. They include:

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance;

13

(e) the extent to which the action or forbearance was foreseeable by the promisor.

Restatement (Second) of Contracts § 139.

The Plaintiff argues the Defendant made a specific promise to hold the debt nondischargeable and he should be held to that promise. The Plaintiff does not address the second or third elements of promissory estoppel. The Defendant argues the Plaintiff "could not have reasonably relied" on the nondischargeability provision in the Agreement, and therefore promissory estoppel is not appropriate.

The nondischargeability provision was a factor in inducing the Plaintiff to act by entering into arbitration instead of proceeding to trial. The non-dischargeability provision was undoubtedly attractive to both parties. Based on that agreement, the parties forsook a jury trial. This was likely less expensive for both parties, probably faster, and had the benefit to the Defendant of being less public. The Plaintiff did not demand a nondischargeability provision as a condition of proceeding to arbitration. Arbitration was suggested by the Defendant's lawyer.

It is not clear that enforcement of the promise is necessary to prevent an injustice. If it is not enforced, the debt will not automatically be declared nondischargeable. However, the Plaintiff still has the opportunity the except the debt from discharge. The Plaintiff has not established the elements of promissory estoppel.

2. <u>Judicial Estoppel</u>

Judicial estoppel is designed to prevent "the perversion of the judicial process." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013). It protects the courts from litigants "who seek to prevail, twice, on opposite theories." *Id.* The doctrine is "a matter of equitable judgment and discretion." *Id.* Despite the flexible nature of the doctrine, the Supreme Court has identified three factors to guide the court:

> (1) whether a party's later position must be clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968719 (2001) (internal quotations omitted)). The cases reiterate that these three factors are not a formula or prerequisites in any way, and other considerations may apply. *New Hampshire*, 532 U.S. at 751. Because of the loose framework associated with judicial estoppel, neither *Grochocinski* nor *New Hampshire* elaborate much in the way of what exactly satisfies these factors. Other circuits have developed stricter tests. *See Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001) (requiring "irreconcilably inconsistent" positions, changing position in bad faith, and tailoring the use of judicial estoppel to "address the affront to the court's authority or integrity"); *Johnson v. Oregon*, 141 F.3d 1361, 1369 (9th Cir. 1998)

("If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply."); *Folio v. City of Clarksburg*, 134 F.3d 1211, 1218 (4th Cir. 1998) (requiring the party to be estopped to have acted "intentionally, not inadvertently" for judicial estoppel to apply).

The Plaintiff argues the Defendant should be judicially estopped from asserting that the debt is dischargeable because he agreed earlier that it would be nondischargeable, and the Plaintiff relied upon that to her detriment. The Plaintiff relies on *Shearer v. Dunkley (In re Dunkley)*, 221 B.R. 207 (Bankr. N.D. Ill. 1998). In *Dunkley*, the debtor settled an adversary proceeding by agreeing that his obligations were nondischargeable. *Id.* at 209. Because of the settlement, the judge did not make findings of fact regarding allegations of fraud. *Id.* The debtor later stopped making his payments and filed another bankruptcy case. *Id.* The court held that the debtor was judicially estopped from changing his position to now assert that unpaid portions of the debt were dischargeable. *Id.* at 214. *Dunkley* dealt with a postpetition settlement of an adversary proceeding, not a prepetition settlement of state court litigation.

The Arbitration Agreement contained an unequivocal statement that the debt would be nondischargeable. The Defendant now seeks the opposite. However, the arbitration was not limited to a conversion or fraud claim—the complaint also included a breach of contract claim. There were no findings explaining the basis for the award.

The Defendant did not succeed in persuading the court to accept his earlier position. The parties mutually agreed to arbitrate, and non-dischargeability was one of many provisions in the Agreement. It is unclear whether the Defendant would derive an unfair advantage if not estopped. The Plaintiff might bear some harm by not having the debt declared automatically nondischargeable, but any such "harm" is not irreparable. Further, the circumstances providing for waiver of dischargeability are limited. There was no stipulation that any award would be admitted to be the result of fraud, nor were there findings that satisfy the elements for nondischargeability under the Code. To the contrary, the Agreement specifically provided there was no admission of fraud. The Plaintiff can still proceed to trial and prove the debt nondischargeable. Therefore, judicial estoppel will not prevent the Defendant from asserting that the debt is dischargeable. The Plaintiff has not established the requirements for judicial estoppel.

### E.   **Attorney-Client Privilege**

In light of the decision on summary judgment, the issue of the potential waiver of attorney-client privilege and the impact this may have on discovery in this proceeding must be addressed.

In opposing summary judgment, the Defendant submitted two affidavits—one from the Defendant himself, and one from Connie Brenny, Attorney Mart Swenson's paralegal. The affidavits contain hearsay and have no evidentiary value with respect to summary judgment. Those affidavits present a question of whether there has been a waiver of the attorney-client privilege.

17

The Defendant's affidavit discusses communications with Attorney David Czech leading up to and including the Arbitration Agreement in the state court proceeding. The affidavit states the Defendant did not authorize Attorney Czech to agree to arbitration or to agree the award would be nondischargeable. It also states Attorney Czech told him any award would be dischargeable, but that he should contact a bankruptcy attorney to discuss his options. The affidavit also describes the Defendant's conversations with Attorney Swenson regarding whether the debt would be dischargeable. Finally, it describes a meeting between the Defendant, Attorney Czech, Attorney Swenson, and Connie Brenny.

Federal Rule of Evidence 502 describes the attorney-client privilege as "the protection that applicable law provides for confidential attorney-client communications." Fed. R. Evid. 502(g). The attorney-client privilege provides "that a client has a right to refuse disclosure and to prevent any other person from disclosing confidential communications with his attorney made for the purpose of facilitating the rendition of professional legal services to the client." 2 *Bankruptcy Evidence Manual* § 501:18 (2014-15 ed.). "The privilege 'only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.'" *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)).

18

The burden of establishing that the attorney-client privilege applies is on the party seeking to assert the privilege. *Id.* To meet this burden, the party asserting the privilege must establish that:

1.  the asserted holder of the privilege is or sought to become a client;

2.  the person to whom the communication was made:

    (a)  is a member of the bar or his subordinate and

    (b)  in connection with his communication is acting as a lawyer;

3.  the communication relates to a fact of which the attorney was informed

    (a)  by his or her client,

    (b)  without the presence of a stranger,

    (c)  for the purpose of securing permanently, either

        (1)  an opinion of law,

        (2)  legal services, or

        (3)  assistance in some legal proceeding,

    (d)  and not for the purpose of committing a crime or tort; and

    (e)  the privilege has been

        (1)  claimed by the client, and

        (2)  not waived by the client.

*Id.* (citations omitted).

Debtors may explicitly waive the privilege, or they may essentially forfeit the privilege by placing confidential communications in issue. *Id.* (citing *Shumaker, Loop & Kendrick, LLP v. Zaremba,* 403 B.R. 480 (N.D. Ohio 2009)).

19

Courts have found that if a debtor asserts as a defense that he was acting on the advice of his attorney, the privilege is waived. *In re Myers*, 382 B.R. 304, 310 (Bankr. S.D. Miss. 2008); *Cuervo v. Snell (In re Snell)*, 232 B.R. 684, 685 (Bankr. S.D. Ohio 1999). Waiver is express when the "holder destroys the privilege by voluntarily disclosing or consenting to disclose any significant part of the matter or the communication." *In re French*, 162 B.R. 541, 546 (Bankr. D.S.D. 1994). Waiver is implied when "a client testifies concerning portions of the attorney-client communication." *Id.*

Federal Rule of Evidence 502 also covers disclosure of privileged communications. It provides as follows.

**(a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver.** When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

**(1)** the waiver is intentional;

**(2)** the disclosed and undisclosed communications or information concern the same subject matter; and

**(3)** they ought in fairness to be considered together.

Fed. R. Evid. 502. Therefore, "the party waives its privilege related to that disclosed information and as to undisclosed information that 'concern[s] the same subject matter' so long as 'the waiver [was] intentional' and the disclosed and undisclosed information concerning the same subject matter 'ought in fairness to be considered together.'" *Schlossberg v. BF Saul Ins. Agency of Md.,*

*Inc.*, Civil Action No. GJH-13-3076, 2015 WL 1522879, at *3 (D. Md. Apr. 1, 2015) (quoting Fed. R. Evid. 502(a)).

Attorneys Czech and Swenson were attorneys for the Defendant. The communications described in the affidavits related to legal services and proceedings and were without the presence of "a stranger." Thus, without a waiver, the communications would normally be privileged. However, the Defendant disclosed communications between himself and Attorneys Czech and Swenson that relate to the state court litigation and claims, the Arbitration Agreement, and whether or not the Defendant would be able to discharge any judgment in bankruptcy. Given the facts of the case, the discussions seem to be a significant part of this matter.

Further, the disclosure was intentional under Fed. R. Evid. 502(a). This was not a case of an accidentally-transmitted document. The Defendant made the statements in an affidavit which he then submitted to the Court, and he has done nothing to retrieve the information as if it was not intentionally disclosed. Disclosing a significant part of the matter or communications qualifies as waiving the attorney-client privilege. The Defendant placed confidential communications with both attorneys at issue. Those communications are relevant to this adversary proceeding. The Defendant destroyed his attorney-client privilege with respect to those communications with Attorney Czech and Attorney Swenson.

**CONCLUSION**

The facts alleged in support of summary judgment raise questions about whether the Defendant's conduct regarding the LLC and its money was proper. However, the prepetition waiver of dischargeability is invalid. Therefore, summary judgment is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: February 29, 2016.

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge